## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SERVICE EMPLOYEES
INTERNATIONAL UNION NATIONAL
INDUSTRY PENSION FUND, et al.,

      Plaintiffs,

      v.

GLENN'S BUILDING SERVICES, INC.,

      Defendant.

Civil Action No. 14-1942 (JDB)

## MEMORANDUM OPINION & ORDER

Plaintiffs, the SEIU National Industry Pension Fund and several of its trustees, brought this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 2001 et seq., to recover withdrawal liability allegedly incurred by defendant, Glenn's Building Services, when it ceased operations in early 2014. Glenn's has failed to appear, and following entry of default by the clerk's office, the Fund moved for entry of a default judgment. This Court denied that motion, concluding that the allegations in the Fund's complaint were insufficient to establish Glenn's liability. See Jun. 18, 2015, Mem. Op. & Order [ECF No. 8]. In the months since, the Fund has filed an amended complaint and a second motion for default judgment. Although the Fund's amended complaint is sufficient to establish Glenn's liability, its second motion for default judgment is insufficient to establish the proper amount of damages. Thus, the Fund's second motion for default judgment will be granted as to liability but denied as to damages.

## DISCUSSION

Federal Rule of Civil Procedure 55(a) provides that the clerk of court must enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or

otherwise defend, and that failure is shown by affidavit or otherwise." A court may then enter a default judgment pursuant to Rule 55(b). "The determination of whether default judgment is appropriate is committed to the discretion of the trial court." Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing Jackson v. Beech, 636 F.2d 831, 836 (D.C. Cir. 1980)). Upon entry of default by the clerk, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., 239 F. Supp. 2d 26, 30 (D.D.C. 2002).

Deemed admitted by Glenn's, the facts in the Fund's amended complaint are sufficient to establish that Glenn's owes withdrawal liability. Glenn's was required to make contributions to its workers' pension plan by the terms of a collective bargaining agreement with a local SEIU union. First Am. Compl. [ECF No. 10] ¶¶ 9–10; see 29 U.S.C. § 1145. In January 2014 Glenn's went out of business. Ex. 2 to First Am. Compl. [ECF No. 10-2] at 10. The Fund thus determined Glenn's to have made a complete withdrawal from the plan, triggering an obligation to pay withdrawal liability. First Am. Compl. ¶ 11; see 29 U.S.C. §§ 1381(a), 1383(a)(2). Two weeks later, consistent with its statutory obligations, the Fund sent Glenn's a letter calculating its provisional withdrawal liability, proposing a payment schedule, and demanding payment. First Am. Compl. ¶ 12; Ex. 2 to Pls.' First Am. Compl.; see 29 U.S.C. § 1399(b)(1). After Glenn's failed to either request a review of the Fund's calculations or make the requested payments, the Fund sent Glenn's a letter noting its failure to pay. First Am. Compl. ¶¶ 13–14. The letter also warned that, if Glenn's did not cure its failure within sixty days, the Fund would exercise its statutory right to declare Glenn's in default and demand immediate payment of its full outstanding withdrawal liability, plus interest. Ex. 3 to Pls.' First Am. Compl. [ECF No. 10-3] at 2; see 29

U.S.C. § 1399(c)(5).  To date, Glenn's has made no payments.  First Am. Compl. ¶ 14.  These allegations, which Glenn's has admitted by its default, are sufficient to establish the Fund's claim to the full amount of withdrawal liability.

Having established Glenn's liability, the remaining question concerns the proper amount of the default judgment.  According to the Fund, Glenn's owes $209,003.86 in withdrawal liability, plus interest, liquidated damages, attorneys' fees, and costs.  Pls.' Second Mot. for Default J. [ECF No. 14].  But the Court cannot simply take the Fund's word for it; Glenn's default "does not automatically establish default liability in the amount claimed by [the Fund]."  Flynn v. Jocanz, Inc., 480 F. Supp. 2d 218, 220 (D.D.C. 2007).  "[U]nless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded."  Int'l Painters & Allied Trades Indus. Pension Fund v. Exec. Painting, Inc., 719 F. Supp. 2d 45, 49 (D.D.C. 2010) (internal quotation marks omitted).  In the ERISA context, calculation of the appropriate sum must be guided by the statute, which "provides that an employer who withdraws from a multiemployer pension plan must make withdrawal liability payments sufficient to cover that employer's fair share of the plan's unfunded vested liabilities."  Nat'l Shopmen Pension Fund v. Disa, 583 F. Supp. 2d 95, 96 (D.D.C. 2008).  "ERISA provides four statutory methods for calculating withdrawal liability."  United Food & Commercial Workers Union-Emp'r Pension Fund v. Rubber Assocs. Inc., 812 F.3d 521, 525 (6th Cir. 2016); see 29 U.S.C. § 1391; 29 C.F.R. § 4211.1(a).

Generally, courts "may rely on detailed affidavits or documentary evidence" when determining the proper amount of a default judgment.  Boland v. Alan W. Smith, Inc., 2012 WL 892911, at *1 (D.D.C. Mar. 15, 2012).  ERISA cases are no exception.  But given the technical nature of ERISA liability calculations, the declarations should "set[] forth with specificity the calculations used to reach [the final] amount."  See Flynn, 480 F. Supp. 2d at 220; see also Boland

v. Elite Terrazzo Flooring, Inc., 763 F. Supp. 2d 64, 69 (D.D.C. 2011) (basing the amount of a default judgment on an affidavit that "details the calculations on which the plaintiffs base their request"). Where the supporting declarations lack the requisite specificity, a motion for default judgment is properly denied. See, e.g., Executive Painting, Inc., 719 F. Supp. 2d at 51–52.

The Fund offers the declaration of its Contribution Compliance Manager, who is tasked with "monitoring the assessment of withdrawal liability against employers that cease participation in the Fund." Ex. 1 to Pls.' Second Mot. for Default J. [ECF No. 14-1] (Anderson Decl.) ¶ 2. But this declaration fails to "set[] forth with specificity the calculations" upon which the Fund's request is based. See Flynn, 480 F. Supp. 2d at 220. In fact, the declaration does not describe those calculations at all. Rather, it refers the Court to another unhelpful document—the "final withdrawal liability assessment" sent to Glenn's in 2015. Anderson Decl. ¶ 8. Although the spreadsheet includes a box around the sum $209,003.86, labeled "Employer's withdrawal," it provides no hint as to how the Fund arrived at that figure. See Ex. A to Anderson Decl. [ECF No. 14-1] at 10. And the Court's attempt to divine some method was stymied almost immediately. The amount of a plan's "unfunded vested benefits" is plainly central to any withdrawal liability calculation. See 29 C.F.R. § 4211.1(a); Disa, 583 F. Supp. 2d at 96. But none of the fields on the Fund's spreadsheet—with unilluminating titles like "Basic Pool," "Reallocated Pool," and "Affected Benefits Pool"—deal expressly with "unfunded vested benefits." See Ex. A to Anderson Decl. at 10. Absent some explanation of the Fund's calculations, the Court is unable to "make an independent determination of the sum to be awarded." Exec. Painting, Inc., 719 F. Supp. 2d at 49 (internal quotation marks omitted). The Fund's motion for default judgment must therefore be denied as to damages.

The Court will postpone consideration of the Fund's requests for interest, liquidated damages, attorneys' fees, and costs. It observes, however, that the Fund's claims for interest and liquidated damages are based, at least in part, upon the SEIU National Industry Pension Plan. <u>See</u> Pls.' Second Mot. for Default J. at 6. When the Court ultimately turns to those requests, it would likely benefit from the opportunity to review that document. There is also some reason to believe the Pension Plan may shed light on the SEIU's method for calculating withdrawal liability. <u>See</u> 29 C.F.R. § 4211.1(a) ("[A] plan determines the amount of unfunded vested benefits allocable to a withdrawing employer in accordance with the presumptive method, unless the plan is amended to adopt an alternative allocative method."). The Fund could help its case, therefore, by attaching the Pension Plan to any renewed motion for default judgment that adequately explains the Fund's calculations.

<u>CONCLUSION</u>

In this case, the Fund asks the Court to assess a substantial amount of damages against an absent defendant under a complicated statute. Before doing so, the Court has an obligation to make an independent determination of the proper sum. The Court recognizes, of course, that ERISA liability calculations are highly complex. It is not necessary for the Fund to describe each individual step in its analysis. Frankly, the Court is not required—and has no desire—to verify the withdrawal liability calculations to the last detail. But the Fund must provide at least some evidence showing it has done the statutorily required calculations in a careful and rigorous manner. To this point, the Fund has failed to do so. Thus, it is hereby

**ORDERED** that [14] plaintiffs' second motion for default judgment is **GRANTED in part** and **DENIED WITHOUT PREJUDICE in part**.

**SO ORDERED.**

/s/
_____
JOHN D. BATES
United States District Judge

Dated: April 13, 2016